VIRGINIA GORE, Respondent, v. HENRY H. BROCKMAN, Appellant.

Kansas City Court of Appeals, May 31, 1909.

1. PHYSICIAN AND SURGEON: Malpractice: Instruction. In an action against a physician for malpractice it was error to refuse instructions which informed the jury that defendant, as a physician, should not be held as an insurer of the success of treatment by the "X-Ray Process," or that it would not be attended by unexpected results, and that he was only required to have the necessary learning and experience to give the treatment in a careful and prudent manner, unless the issue is clearly tendered that there was negligence or unskillfulness in prescribing such treatment at all.

2. ————: Degree of Skill and Care Required. A physician is only required to give his patient his diligent attention and best thought and in prescribing, administering or applying treatment, to use that care and skill and prudence that an ordinarily capable doctor would use in the same or similar situation and condition or circumstances.

3. ————: Witnesses: Cross-examination. In an action against the physician for malpractice it was highly prejudicial and improper to ask defendant on cross-examination, whether or not he took out protective insurance to guard against damages that might accrue in this or any other suit for malpractice.

Appeal from Miller Circuit Court.—*Hon. Wm. H. Martin,* Judge.

REVERSED AND REMANDED.

*W. S. Pope, D. E. Wray* and *N. L. Musser* for appellant.

Physicians are not warrantors of cures nor liable for errors of judgment. VanHooser v. Berghoff, 90 Mo. App. 487; Logan v. Field, 75 Mo. App. 594; Burnham v. Jackson, 20 Colo. 532; Jones v. Angell, 95 Ind. 376;

Tefft v. Wilcox, 6 Kan. 33; Patten v. Wiggin, 51 Me. 594; Getchel v. Hill, 21 Minn. 464; Martin v. Courtney, 75 Minn. 255; O'Hara v. Wells, 14 Neb. 403; Graham v. Gauntier, 21 Texas 111; McCandless v. Mewha, 22 Pa. St. 261; Pelky v. Palmer, 109 Mich. 561; Duboise v. Decker, 130 N. Y. 325; Barker v. Lane, 23 R. I. 224; Simms v. Parker, 41 Ill. App. 284; Boydston v. Gittner, 3 Ore. 118. Instructions given at instances of plaintiff are in violation of well-known principles enunciated in foregoing cases. It was error to require defendant to state that he had transferred his property to his wife, that he had insurance protection, and it was also error to require him to give the contents of his policy from memory when there had been no attempt made to have the policy before the court. Miller v. Dill, 149 Ind. 326; Sievers v. Peters Box Co., 151 Ind. 642, 658; Board of Commissioners v. Pearson, 129 Ind. 456; Railway v. Lee, 17 Ind. App. 222; Getty v. Hamlin, 27 N. E. 299; R. S. 1899, sec. 737, et seq. A physician is not liable for error or mistake in diagnosing. Jamison v. Weld, 45 Atl. (Me.) 299; Ramsdell v. Grady, 54 Atl. (Me.) 763; Mallen v. Boynton, 132 Mass. 443; Griswold v. Hutchinson, 47 Neb. 727; Richards v. Willard, 176 Pa. St. 181. The law is well settled that it is improper to show in an action for negligence that the defendant is insured against loss in case of a recovery against it on account of its negligence; it is not proper to inform the jury of such fact in any manner. If allowed, it will be reversible error. Manigold v. Traction Co., 80 N. Y. Supp. 861; Wildrick v. Moore, 66 Hun (N. Y.) 630. Upon the question of testimony regarding defendant having transferred his property, we submit the following: Telegraph Co. v. Cashman, 132 Fed. 805; Assurance Co. v. Bailey, 44 S. E. (Va.) 692; Moody v. Osgood, 50 Barb. (N. Y.) 628; Rosewater v. Huffman (Neb.), 38 N. W. 857.

*Moore & Williams* and *Hunter & Kraemer* for respondent,

The right of plaintiff's attorney to cross-examine the defendant on collateral matters was entirely within the discretion of the trial court and was eminently proper, after his statement to plaintiff that he is not worth a dollar, and was unable to assist her to hospital treatment for the trouble he had brought on by his treatment. On cross-examination a witness may be compelled to answer any question which tends to test his credibility or shake his credit or show any questionable conduct. The doctrine is so stated in Stephen's Digest on the law of evidence, p. 123, which is often quoted by appellate courts. Muller v. Hospital Ass'n, 7 Mo. App. 390; State v. Long, 201 Mo. 675 and citations; O'Connor v. Transit Co., 106 Mo. App. 222; Dunn v. Altman, 50 Mo. App. 232; Hirsch v. Green, 83 Mo. App. 486; Briscoe v. Railway, 118 Mo. App. 668. The course and extent of a cross-examination, barring the rule that a witness cannot be made to criminate himself, is in the sound discretion of the trial court, and such discretion is not reviewable on writ of error, and appellate courts are reluctant to review or reverse them. Rea v. Missouri, 17 Wall. (U. S.) 532; Davis v. Coblens, 174 U. S. 719; Railway v. Powell, 9 L. R. A. (N. S.) 769-778; 1 Thompson on Trials, secs. 415 to 418; Straus v. Mertins, 64 Ala. 299; Butler v. Flanders, 12 Jones & E. 531; State v. Boyd, 178 Mo. 17; Prescott v. Ward, 92 Mass. 203. The leading case in this State on the proper qualifications of a physician or surgeon, and of the care and skill he is required to use, is Wheeler v. Bowles, 163 Mo. 198. That decision is the controlling one on this point in this State and the instructions are copied from that case principally, though some of those for defendant go further in his favor than any given in that case. We have examined in detail the cases cited on this point from other States by the appellant. Copeland v. Railway

195 Mo. 662; McCaffery v. Railway, 192 Mo. 152; Lucket v. Railway, 150 Mo. 271; Reynolds v. Railway, 189 Mo. 419. On this question as to the qualifications of the physician to treat a given disease, and the care and skill required in such treatment, we desire to call the attention of the court to the following cases cited by the appellant. Griswold v. Hutchison, 47 Neb. 727; Jamison v. Webb (Me.), 45 Atl. 299; Ramsdell v. Grady (Me.), 54 Atl. 763; Dubois v. Decker, 130 N. Y. 325; Pilky v. Palmer, 109 Mich. 561; Patten v. Wiggen, 51 Me. 594; Baker v. Lane, 23 R. I. 224; Tefft v. Wilcox, 6 Kan. 46; Jackson v. Burnham, 20 Colo. 532.

ELLISON, J.—Defendant is a physician and plaintiff was his patient. She charged malpractice and recovered judgment in the trial court for thirty-five hundred dollars.

The petition alleges that plaintiff was suffering from some "malady" and that she engaged defendant to treat her. That defendant pronounced her trouble to be "the hardening of the right lobe of the liver and proposed to treat her by means of what is generally known as an X-ray machine." That defendant "unskillfully, rashly, unprofessionally, negligently and ignorantly commenced treating her with the X-ray." That in so doing the "right side of the abdomen for a space of more than one foot in diameter was blistered and became raw and sore," etc. The petition then, among other things, sets forth the serious and distressing consequences following such treatment.

Defendant was a witness in his own behalf and on cross-examination plaintiff's counsel was permitted to ask him, over the objection of his counsel, the following question: "Doctor, I will ask you if on or about that date (the time when plaintiff's condition became serious) you didn't take out what is called 'Doctor's Protective Insurance' to guard you against damages that might accrue from this or any other suit for malprac-

tice?" The defendant answered that he carried insurance of that kind. The question was improper and was highly prejudicial. The issue on trial was negligent treatment of plaintiff by defendant as her physician, and indemnity insurance would not aid in determining that question. But more than that, its tendency and effect was to withdraw the real defendant from the consideration of the jury and to substitute for him an insurance company. A litigant has a right to his own personality and the opposing party has no right to have the consideration of his claim influenced or measured by any other standard, so far as individuality is concerned, than that afforded by the party of whom he complains. He cannot ask unliquidated damages of a good man who may have injured him and then substitute a bad man at the trial.

The subject has been before the courts and similar questions have been condemned. [Cosselmon v. Dunfee, 172 N. Y. 507; Manigold v. Black River Co., 80 N. Y. Supp. 861; Barrett v. Bonham Oil Co. (Texas), 57 S. W. 602; Sawyer v. Arnold Shoe Co., 90 Me. 369 (38 Atl. 333); Iverson v. McDonnell, 36 Wash. 73 (78 Pac. 202); Fuller Co. v. Darragh, 101 Ill. App. 664; White's Supp. Thompson on Neg., sec. 7275a.] Of these cases, in Cosselmon v. Dunfee it was held to justify a court in setting aside a verdict where the mere question had been asked and ruled as improper, if it was thought by the trial court to have influenced the verdict. In Manigold v. Black River Co., the mere asking of the question, which was not allowed to be answered, was held to be reversible error unless it affirmatively appeared that it had not affected the verdict. And the same ruling was made in Iverson v. McDonnell. In Barrett v. Bonham Oil Co., it was held that an employer having accident insurance for injury to employees was not a circumstance bearing on the question of his negligence and a question as to such insurance should not be allowed. In Sawyer v. Arnold Shoe Co., the Supreme Court of

Maine said that it was "true the fact of insurance might have the effect of lessening the defendant's reason or motive for being careful. But the question was not as to how much or how little motive the defendant had for being careful, but whether or not it had in fact exercised due and reasonable care."

Defendant was asked, over defendant's objection, on cross-examination, if he had not conveyed property. As asked, the question was improper. But it would be permissible to ask him on cross-examination if he had conveyed his property to avoid the payment of damages he may have considered he had incurred.

Some of the instructions given for plaintiff are subject to criticism. It is difficult to say either from the language of the petition or instructions whether plaintiff intended to charge that the X-ray treatment was not a proper treatment for plaintiff's ailment, even though skillfully and carefully applied, or that, though a proper treatment, it was negligently and unskillfully applied, or whether both these charges were intended. The petition should be made definite and clear. And in this connection it would be well to omit anything subjecting it to the charge of being argumentative. It is not necessary to state therein what other physicians had told plaintiff; or that defendant "took a trip west;" or that "she believes he (another doctor) saved her from almost immediate death."

The first instruction submits among other things whether X-ray treatment "was in accordance with the ordinary and established practice of the medical profession for the treatment of the disease from which plaintiff was suffering." The proper submission of that question as raised by the petition is whether an ordinarily skillful and prudent physician would have adopted that treatment in the circumstances which confronted him when he applied it.

Of the instructions asked by defendant, two were refused which informed the jury that defendant as a

physician should not be held as an insurer of the success of treatment "by the X-ray process," or that it would not be attended by unexpected results, and that he was only required to have the necessary learning and experience to give the treatment in a careful and prudent manner. These instructions were proper and should be given on another trial unless the issue is clearly tendered that there was negligence or unskillfulness in prescribing such treatment at all. If that is an issue then the instructions should also cover that phase; for a physician might be fully. equipped in learning, skill and care, to use the X-ray, and yet use it in a case where a prudent physician would not have adopted it as a remedy. For instance, a surgeon might possess great learning and skill, and when performing a certain operation might be as careful as possible, yet it might be that a prudent and skillful man of that profession, in the same circumstances and conditions, would not have performed such an operation.

On the subject of direction to the jury in cases of this character it may be stated to be the law that a physician is not to be held for honest error of judgment. He is only required to give his patient his diligent attention and best thought and in prescribing, administering or applying treatment, to use that care, skill and prudence that an ordinarily capable doctor would use in the same or like situation and condition or circumstances. [Wheeler v. Bowles, 163 Mo. 398.] Otherwise, in view of the fallibility of all men, we would require of him more than can justly be demanded. The issue which one should tender who seeks to hold a physician liable in damages for malpractice, is incompetency or negligence or both. As to which of these or whether both should be charged must, of course, depend upon the case. But at all events the charge relied upon should be distinctly made so that confusion may not result. The error in an instruction as to measure of damages being too general and on account of which

plaintiff offered to remit, will be avoided on retrial. The objection to other instructions on measure of damages is not well taken.

The foregoing covers the points made by defendant in his "brief and authorities," and results in reversing the judgment and remanding the cause. All concur.